Filed 9/24/19 (unmodified opn. attached)

CERTIFIED FOR PARTIAL PUBLICATION*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

|  |  |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>WHITTIER BUCK BUCHANAN,<br><br>　　　Defendant and Appellant. | A153155<br><br>(Alameda County<br>Super. Ct. No. 17CR013796)<br><br>**ORDER MODIFYING OPINION<br>AND DENYING REHEARING;<br>NO CHANGE IN JUDGMENT** |

THE COURT:

Respondent's petition for rehearing is denied. The opinion is modified as follows:

On page 9, in the second paragraph, the first sentence is amended to: "The court sentenced Buchanan to an indeterminate sentence of 60 years to life in prison, comprised of the following: an indeterminate term of 50 years to life on count 1 (kidnapping with intent to commit a sex crime), plus . . . ."

On page 9, in the second paragraph, the third sentence is amended to: "The court imposed a concurrent determinate term of 12 years on count 2 (assault with intent to commit a sex crime) . . . ."

On page 11, heading C is amended to: "Section 654 Does Not Apply to Count 2, but the Prior Serious Felony Conviction Enhancement Attendant to that Count Should

---

* Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of the Discussion parts I, II A, and C–E.

1

Run Concurrently to Count 1 and Consecutively to Count 2 if the Court Does Not Strike or Dismiss It Pursuant to Bill 1393."

On page 14, paragraphs one and two are amended to read: "The court, however, erred by ordering the prior serious felony conviction enhancement attached to count 2 to run consecutive to the sentence imposed on count 1. "[A] prior serious felony enhancement imposed on a determinate sentence must follow the mode of sentencing imposed on at least one of the determinate counts." (*People v. Tua* (2018) 18 Cal.App.5th 1136, 1139.) If the court does not strike or dismiss this prior serious felony conviction enhancement under Bill 1393 (see *post*, at pp. 15–16), the court must order the enhancement attendant to count 2 to run concurrently to count 1 and consecutively to count 2."

On page 15, in the final paragraph, the final sentence is amended to: "If the court declines to strike or dismiss the prior serious felony conviction enhancement attached to count 2, it must run that enhancement concurrently with the sentence imposed on count 1 and consecutively to count 2."

On page 16, in the disposition, parenthetical (3) is amended to: "order the prior serious felony enhancement (§ 667, subd. (a)(1)) attendant to count 2 to run concurrently to count 1 and consecutively to count 2, unless the court exercises its discretion to strike or dismiss that enhancement pursuant to Bill 1393; and"

This modification does not affect the judgment.


Dated: _____          _____, P. J.

2

Trial Court:  Alameda County Superior Court

Trial Judge:  Hon. Trina L. Thompson-Stanley

Counsel:

William J. Capriola, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler and Jeffrey M. Laurence, Assistant Attorneys General, Donna M. Provenzano and Victoria Ratnikova, Deputy Attorneys General for Plaintiff and Respondent.

Filed 8/28/19 (unmodified version)

**CERTIFIED FOR PARTIAL PUBLICATION**[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>WHITTIER BUCK BUCHANAN,<br><br>    Defendant and Appellant. | A153155<br><br>(Alameda County<br>Super. Ct. No. 17CR013796) |

A jury convicted Whittier Buchanan of several crimes, including kidnapping with intent to commit a sex offense (Pen. Code, § 209, subd. (b)(1)).[1]  The trial court found certain enhancement allegations true and sentenced Buchanan to 60 years to life in prison, which included 10 years for two prior serious felony convictions (§ 667, subd. (a)(1)).  Buchanan appeals, raising claims of instructional and sentencing error.  The Attorney General contends the court made several sentencing errors.

We affirm the judgment of conviction and remand for resentencing.

FACTUAL AND PROCEDURAL BACKGROUND

The prosecution charged Buchanan with kidnapping to commit a sex offense (§ 209, subd. (b)(1); count 1); assault with intent to commit a sex offense (§ 220, subd. (a)(1); count 2); and failure to register as a sex offender (§§ 290, subd. (b), 290.018, subd. (b); count 3).  The information alleged Buchanan had seven prior strike convictions (§§ 667, subds. (b)-(i); 1170.12), six prior serious felony convictions (§ 667, subd. (a)(1)), and that he had served seven prior prison terms (§ 667.5, subd. (b)).  The

_____

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of the Discussion parts I, II A, and C–E.

[1] Statutory references are to the Penal Code.

1

information also alleged that as to count 1, Buchanan was a habitual sex offender (§ 667.71, subds. (b) & (e)).

*Prosecution Evidence*

A.     Buchanan's Prior Convictions

In 1990, Buchanan was convicted of four counts of selling cocaine to a Drug Enforcement Administration agent. In 1995, Buchanan sexually assaulted a woman; the following year, he was convicted of forcible rape, forcible oral copulation, and sexual battery. He was sentenced to state prison, and was ordered to register as a sex offender. In 2017, Buchanan was on parole.

B.     The Incident Involving Jane Doe

In 2017, Doe was a college student. She was five feet four inches tall and weighed 110 pounds. At about 9:00 p.m. on a May 2017 evening, Doe went to a birthday party, where she drank a beer, and a shot of vodka, "[m]aybe a little bit more than that." A few hours later, Doe and her friends went to a nearby bar, where she drank a "fish bowl" with several other people.[2] Doe and her friends stayed at the bar until 2:00 a.m. Over the course of the evening, Doe had approximately seven shots of alcohol.

When Doe left the bar, she was intoxicated but coherent. She and her friends went to a restaurant. After about 15 or 20 minutes at the restaurant, Doe ordered an Uber, which arrived at approximately 2:30 a.m. Doe checked the license plate, and got into the sedan. The driver—a Caucasian man—took her to her house. During the ride, Doe realized she did not have her keys, and she got upset. Doe, however, assured the driver she would be alright. She got out of the car and sat on the front steps of her house. The Uber left. The street was dark and deserted.

Doe called her father, who had a spare key to her house, and left him a voicemail asking him to bring the spare key. As she sat on the front step, an African-American

---

[2] A fish bowl is a 92-ounce mixed drink served in a large bowl. It contains six ounces of alcohol. Doe took prescribed medication for anxiety and depression. The medication did not cause her to hallucinate. Doe did not take the medication on the day of the incident and she did not consume illegal drugs.

man—later identified as Buchanan—walked up to her and said, " 'It's unsafe out here.' " Buchanan grabbed Doe's elbow. Doe mistakenly thought Buchanan was her Uber driver, so she stood up and followed him to his vehicle, a Chevy Astro van. Doe got into the front passenger seat, still thinking Buchanan was her Uber driver. She called her father and left him another voicemail, saying she was fine, and that she was in an Uber. Doe's father called back and told Doe to ask the driver to take her to a nearby Safeway that was open 24 hours.

Buchanan agreed, but then drove in the opposite direction, to a "woodland looking area." At that point, Doe realized "something was wrong" and "asked to be dropped off anywhere." Buchanan refused to let Doe out of the car and said Doe " 'wasn't going anywhere.' " Doe panicked and screamed. Buchanan covered Doe's mouth with his hand to muffle her scream. After a short struggle, Doe removed Buchanan's hand and climbed into the back seat. Shortly thereafter, Buchanan said to Doe in an ominous tone, " 'Now you've . . . got me. You are going to get me into trouble. You made me mad.' "

Doe was terrified. She said, " 'take all my money. Just let me off anywhere.' " Buchanan took the money but kept driving. He remarked that Doe " 'looked like a girl who gives good head,' " and threatened she had " 'better give him the best head of his life.' " Doe thought Buchanan was going to rape her, and feared he would "hurt, maybe kill [her]" if she did not "sexually please him." Trying to placate Buchanan, Doe responded, " 'Yeah. Sure. Anything. Just please don't hurt me.' " Until that point, Doe and Buchanan had not discussed any sexual acts, and Doe had not flirted with Buchanan. She did not tell Buchanan she had been raped. Doe did not want to perform oral sex on Buchanan, but she agreed, to distract him while she tried to escape.

Doe could not find a door handle, so she "tinkered with the automatic window switch." The window was partially open but it "didn't roll down." As Doe concentrated on pulling down the window, she tried to distract Buchanan by asking him questions. Buchanan became suspicious and yelled, " 'Are you planning something back there?' " Not sober enough to think of an excuse, Doe responded: " 'I'm trying to get the window

3

down.' " Buchanan seemed angry. He said, " 'Don't you dare' " and reached for Doe. Doe began climbing through the window, and Buchanan grabbed her torso and legs.

Doe managed to climb through the window. She landed on a curb, on her knees and elbows. The van slowed to a stop, and Doe saw Buchanan's face through the driver-side window. He had a "displeased" expression. Doe screamed for help, and Buchanan drove off. Doe was in the van for a total of 30 minutes.

A neighbor heard Doe repeatedly scream " 'Help me, help me' " in a desperate voice. The neighbor ran outside and saw Doe sitting in a driveway across the street. He approached her. Doe—terrified—asked, " 'Are you going to rape me?' " After the neighbor assured Doe he would help her, Doe said "her Uber driver had tried to rape her" and "was going to make her suck his dick." Another neighbor—who had also heard the screams—called 911.

C.    Police Investigation

When the police arrived, Doe was panicked. She seemed intoxicated and was jittery but did not appear to be under the influence of drugs. Doe told the police she was in a minivan, and that the driver refused to let her leave "unless she orally copulated him." Doe said she escaped but that her phone was in the van. She gave the police a description matching Buchanan. Later that morning, the police apprehended Buchanan, and Doe identified him in an in-field show-up.

In Buchanan's van, police found Doe's phone, suspected methamphetamine, and a pipe with burn marks and residue. There was an unused condom on the floor between the driver and passenger seats. During the incident, Buchanan was wearing a GPS monitor. The GPS locations matched Doe's description of where she entered and exited Buchanan's van.

The police interviewed Buchanan twice. In the first interview, Buchanan told the police he saw Doe crying. She said she could not find her house keys, so Buchanan offered to let her sit in his van. Doe spent a few minutes in the front passenger seat of the van. The passenger door never closed and the van did not move. Doe called someone to give her a house key. While she waited for the key, Doe explained how she lost her keys,

and "she went on about her drinking problems and psychological stuff." Eventually, Doe got out of the van and Buchanan drove away.

In a second interview, Buchanan described the incident differently. He told the police he saw a girl with "long . . . legs," wearing short shorts, and knee-high boots. She was crying. Buchanan thought Doe was attractive and imagined having sex with her. Doe got in Buchanan's van; she said she had been raped and forcibly orally copulated. Based on Doe's appearance, Buchanan believed this had happened. Doe asked Buchanan to drive her home and offered him money. She told Buchanan she had " 'some kind of mental or psychological mind problem' " and a "drinking problem."

At some point, Buchanan stopped the van because he was tired of driving, and he and Doe talked in the backseat. Doe offered to have sex with Buchanan and to " 'suck [his] dick real good.' " She showed Buchanan her vagina. Buchanan though it was "too good to be true" and became concerned, because Doe's "demeanor kept flipping," from "crying to totally sober." Eventually, he told Doe to get out of the car and she "went . . . 5150 on [him]" and began yelling for help. Buchanan drove away.

Buchanan denied kidnapping Doe or holding her in the van. He denied using methamphetamine and claimed it belonged to a homeless woman.

*Defense Evidence*

At trial, Buchanan conceded his description of the incident during the first police interview was different than the description he gave in the second interview. Buchanan's trial testimony was somewhat similar to his second police interview but added certain details, including that Doe smoked methamphetamine in his van. Some of Buchanan's trial testimony differed from the second police interview, i.e., Buchanan testified he was not attracted to Doe. A character witness testified for Buchanan.

*Verdict and Sentence*

In 2017, the jury convicted Buchanan of the charges, and the court sentenced him to 60 years to life in prison.

DISCUSSION

I.

*The Instructional Error Claims Are Unavailing*

Buchanan contends the court erred by instructing the jury with CALCRIM No. 361 (failure to explain or deny adverse testimony) and by failing to sua sponte deliver CALCRIM No. 3500 (unanimity) for count 2 (assault with intent to commit a sex offense).

A.      Any Assumed Error in Giving CALCRIM No. 361 Was Harmless

The court instructed the jury with CALCRIM No. 361, which provided:  "If the defendant failed in his testimony to explain or deny evidence against him, and if he could reasonably be expected to do so based on what he knew, you may consider his failure in explaining or denying that evidence.  Any such failure is not enough to prove the defendant's guilt.  The people must still prove the defendant guilty beyond a reasonable doubt.  [¶]  If the defendant failed to explain or deny, it is up to you to decide the meaning and importance of that failure."

CALCRIM No. 361 "applies only when a defendant completely fails to explain or deny incriminating evidence, or claims to lack knowledge and it appears from the evidence that the defendant could reasonably be expected to have that knowledge." (*People v. Cortez* (2016) 63 Cal.4th 101, 117.)  "Even if the defendant's testimony conflicts with other evidence or may be characterized as improbable, incredible, unbelievable, or bizarre, it is not, . . . 'the functional equivalent of no explanation at all.' " (*Id.* at p. 117.)  Buchanan argues the court prejudicially erred by giving this instruction because he did not fail to explain or deny incriminating evidence.  "Assertions of instructional error in this context are reviewed de novo."  We consider the merits of Buchanan's claim notwithstanding his failure to object to the instruction in the trial court. (*People v. Grandberry* (2019) 35 Cal.App.5th 599, 604.)

Here, any assumed error in giving CALCRIM No. 361 was harmless because it is not reasonably probable Buchanan would have received a more favorable verdict had the instruction not been given.  The evidence supporting Buchanan's guilt was strong.  At

6

trial, Doe described the kidnapping and the assault, and her testimony was corroborated by GPS evidence and by witnesses who saw Doe after she emerged from Buchanan's van.  In contrast, the evidence supporting the defense—testimony from Buchanan, a registered sex offender—was weak.

In addition to the strong evidence of Buchanan's guilt, the impact of CALCRIM No. 361 was mitigated by the language of the instruction, which states the failure to explain or deny, by itself, is not a sufficient basis upon which to infer guilt.  The instruction also emphasizes the People's burden to prove guilt beyond a reasonable doubt and leaves the meaning and importance of the defendant's failure to explain or deny to the jury.   (See *People v. Vega* (2015) 236 Cal.App.4th 484, 503.)  Other instructions—including CALCRIM No. 200, which advised the jury to disregard inapplicable instructions, and CALCRIM No. 226, on evaluating witness credibility—mitigated any prejudicial effect of the instruction.

In light of the ample evidence of guilt, and the jury instructions as a whole, it is not reasonably probable Buchanan would have obtained a more favorable verdict had CALCRIM No. 361 not been given.  (*People v. Vega, supra,* 236 Cal.App.4th at p. 503; *People v. Lamer* (2003) 110 Cal.App.4th 1463, 1472.)  Buchanan's reliance on a dissenting opinion in *People v. Saddler* (1979) 24 Cal.3d 671, 689–690 does not alter our conclusion.

B.     No Error in Failing to Sua Sponte Instruct on Unanimity

Buchanan claims the court erred by failing to sua sponte instruct the jury with CALCRIM No. 3500.  According to Buchanan, a unanimity instruction was required because two acts could have formed the basis for count 2 (assault with intent to commit a sex offense).

"[W]hen violation of a criminal statute is charged and the evidence establishes several acts, any one of which could constitute the crime charged, either the state must select the particular act upon which it relied for the allegation of the information, or the jury must be instructed that it must agree unanimously upon which act to base a verdict of guilty.  [Citation.]  There are, however, several exceptions to this rule.  For example, no

7

unanimity instruction is required if the case falls within the continuous-course-of-conduct exception, which arises 'when the acts are so closely connected in time as to form part of one transaction' [citation], or 'when . . . the statute contemplates a continuous course of conduct of a series of acts over a period of time.' [Citation.]  There also is no need for a unanimity instruction if the defendant offers the same defense or defenses to the various acts constituting the charged crime." (*People v. Jennings* (2010) 50 Cal.4th 616, 679.)

Here, no unanimity instruction was required because the acts forming the basis for count 2 were " 'so closely connected as to form part of one transaction.' " (*People v. Benavides* (2005) 35 Cal.4th 69, 98.)  Doe was in the car for a total of 30 minutes.  While she was in the car, Buchanan covered her mouth to muffle her scream, and they briefly struggled as she tried to remove his hand.  Then Doe climbed into the backseat of the van.  Shortly thereafter, Doe attempted to climb out of the window.  As she tried to escape, Buchanan pulled on Doe's legs.  The two acts—covering Doe's mouth and pulling on her legs—occurred in a short period of time, in the same location. Accordingly, the acts were so closely connected as to form one transaction.  (*People v. Benavides*, at p. 98 [unanimity instruction not required where criminal acts occurred "within a very small window of time"]; *People v. Percelle* (2005) 126 Cal.App.4th 164, 181–182 [continuous course of conduct exception applied where defendant used same counterfeit access card in two separate visits to store on the same day].)

A unanimity instruction was not required for the additional reason that Buchanan offered the same defense to "the various acts constituting" the assault.  (*People v. Jennings, supra,* 50 Cal.4th at p. 679.)  Buchanan's defense was he did not commit the offenses—he claimed Doe volunteered to perform sex acts on him, and that her memory of the events was inaccurate.  Because Buchanan did not offer a defense that he either covered Doe's mouth *or* grabbed her legs, no juror could have believed he committed one act but disbelieved he committed the other.  No unanimity instruction was required.  (See *People v. Williams* (2013) 56 Cal.4th 630, 682; *People v. Covarrubias* (2016) 1 Cal.5th 838, 880.)

## II.

### *The Matter Must Be Remanded for Resentencing*

At the 2017 sentencing, the trial court struck one prior serious felony conviction and found the remaining prior felony convictions true. It found the habitual sex offender allegation true. The court made no express findings regarding the prior prison term allegations.

The court sentenced Buchanan to an indeterminate sentence of 60 years to life in prison, comprised of the following: 50 years to life on count 1 (kidnapping with intent to commit a sex crime), plus 5 years, for the prior serious felony conviction enhancement attendant to count 1. To this 55 years, the court added 5 years "for the prior conviction as to count [2]." The court imposed a concurrent term of 12 years on count 2 (assault with intent to commit a sex crime) and a concurrent term of six years on count 3 (failure to register as a sex offender). The court also issued a no-contact order requiring Buchanan to "stay away from Jane Doe directly or indirectly." The no-contact order is not reflected in the sentencing minute order or abstract of judgment.

Both parties raise sentencing error claims. Buchanan contends: (1) the no-contact order is unauthorized; (2) the sentence on count 2 must be stayed pursuant to section 654; and (3) the prior serious felony enhancement associated with count 2 must run concurrently to the sentence imposed on count 2. The Attorney General argues consecutive sentences on counts 2 and 3 were mandatory under the Three Strikes Reform Act of 2012 (Proposition 36).

The parties agree the court erred by failing to impose or strike the prior prison term enhancement(s), but disagree on the number of prior prison terms Buchanan suffered. The parties agree the matter must be remanded for the court to exercise its discretion regarding the two prior serious felony enhancements pursuant to Senate Bill No. 1393 (2017-2018 Reg. Sess., Bill 1393).

A.     Remand to Comply with Section 136.2

Buchanan contends the no-contact order is "statutorily unauthorized and must be stricken." Addressing the claim on the merits notwithstanding Buchanan's failure to

9

object in the trial court (*People v. Ponce* (2009) 173 Cal.App.4th 378, 381–382), we conclude section 136.2, subdivision (i)(1) authorizes the order, but that the matter must be remanded for the court to state a duration, and the reasons supporting that duration.

Pursuant to section 136.2, subdivision (i)(1), a trial court may issue a postjudgment protective order where a defendant has been convicted of a crime requiring sex offender registration. "The order may be valid for up to 10 years, as determined by the court. . . . It is the intent of the Legislature . . . that the duration of any restraining order issued by the court be based upon the seriousness of the facts before the court, the probability of future violations, and the safety of a victim and his or her immediate family."

Here, section 136.2 authorized the no-contact order because Buchanan was convicted of crimes requiring him to register as a sex offender under section 290, subdivision (c).[3] The no-contact order, however, violates section 136.2 because it does not state a duration. We decline the Attorney General's suggestion to "presume the trial court understood and applied the 10-year limitation set forth" in the statute and to modify the order to impose that time limit.

" ' " We imply all findings necessary to support the judgment, and our review is limited to whether there is substantial evidence in the record to support these implied findings" ' " (*People v. Therman* (2015) 236 Cal.App.4th 1276, 1279), but on this record we cannot conclude substantial evidence supports a 10-year duration. Under section 136.2, subdivision (i)(1), the court must consider "the seriousness of the facts before the court, the probability of future violations, and the safety of a victim and his or her immediate family" when determining the duration of the no-contact order. Here, the record does not indicate whether the court considered these factors when imposing the no-contact order, and the Attorney General identifies no evidence supporting a 10-year duration.

---

[3] *People v. Robertson* (2012) 208 Cal.App.4th 965, 996 has no application here. That case involved a prior version of section 136.2, which authorized a protective order only where the defendant was convicted of domestic violence.

10

We remand to the trial court to determine the duration of the no-contact order, and to explain the reasons for that duration in accordance with the factors listed in section 136.2, subdivision (i).

B. Proposition 36 Does Not Mandate Consecutive Sentences for Counts 1 and 2, but a Consecutive Sentence Must Be Imposed on Count 3

The Attorney General argues "consecutive sentencing was mandatory under Proposition 36." The Attorney General, however, acknowledges *People v. Torres* (2018) 23 Cal.App.5th 185 (*Torres*) has rejected this argument. In *Torres*, a division of this court held Proposition 36 did not alter the rule that "trial courts have discretion to impose concurrent sentences for multiple serious or violent felonies against a single victim if they were committed on the 'same occasion' or arose from the 'same set of operative facts.' " (*Torres, supra,* at p. 197, citing *People v. Hendrix* (1997) 16 Cal.4th 508.) We decline the Attorney General's suggestion to conclude *Torres* is wrongly decided. We hold the trial court did not abuse its discretion by imposing a concurrent sentence on count 2.

We reach a different conclusion with respect to count 3, failure to register as a sex offender. Where a defendant has "been convicted of a nonserious and/or violent felony, the term imposed for that crime [must be] consecutive to the terms of the serious and/or violent felonies . . . regardless of whether those serious and/or violent felonies were committed on 'the same occasion' or arose from 'the same set of operative facts.' " (*Torres, supra,* 23 Cal.App.5th at p. 203.) Buchanan concedes the "failure to register is a nonviolent/nonserious felony" and, as a result, the trial court should have imposed a consecutive term on that conviction.

We remand for the court to impose a consecutive sentence on count 3.

C. Section 654 Does Not Apply to Count 2, but the Prior Serious Felony Conviction Enhancement Attendant to that Count Should Run Concurrently if the Court Does Not Strike or Dismiss It Pursuant to Bill 1393

On count 1, the court imposed an indeterminate term of 55 years. On count 2, the court imposed a concurrent, determinate term of 12 years. The court added 5 years to the indeterminate term on count 1, "for the prior conviction as to count [2]."

11

Buchanan argues section 654 barred imposition of sentence on count 2, assault with intent to commit a sex crime. "Section 654, subdivision (a), provides: 'An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision.' ' "Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one." ' " (*People v. Dearborne* (2019) 34 Cal.App.5th 250, 262–263.)

" 'The defendant's intent and objective are factual questions for the trial court; [to permit multiple punishments,] there must be evidence to support a finding the defendant formed a separate intent and objective for each offense for which he was sentenced.' " (*People v. Coleman* (1989) 48 Cal.3d 112, 162.) A trial court's "imposition of concurrent terms" constitutes an implicit "rejection of the applicability of section 654." (*People v. Alford* (2010) 180 Cal.App.4th 1463, 1468.) We uphold an implied "finding that a defendant harbored a separate intent and objective for each offense . . . if it is supported by substantial evidence." (*People v. Blake* (1998) 68 Cal.App.4th 509, 512.) Under this standard, we " 'review the trial court's findings "in a light most favorable to the respondent and presume in support of the order the existence of every fact the trier could reasonably deduce from the evidence." ' " (*People v. Lopez* (2011) 198 Cal.App.4th 698, 717.)

Buchanan claims the sentence on count 2 should have been stayed because counts 1 and 2 were part of a continuous course of conduct with the single goal of sexually assaulting Doe. Our high court rejected a similar argument in *People v. Perez* (1979) 23 Cal.3d 545. There, a jury convicted the defendant of forcible rape, forcible sodomy, and forcible oral copulation, and the trial court stayed sentence on the sodomy and oral copulation convictions. (*Id.* at pp. 549–550.) On appeal, the defendant argued "the trial court properly found that his sole intent and objective was to obtain sexual

12

gratification[.]" (*Id.* at p. 552.) *Perez* disagreed, and explained: "Such an intent and objective is much too broad and amorphous to determine the applicability of section 654. Assertion of a sole intent and objective to achieve sexual gratification is akin to an assertion of a desire for wealth as the sole intent and objective in committing a series of separate thefts. To accept such a broad, overriding intent and objective to preclude punishment for otherwise clearly separate offenses would violate the statute's purpose to insure that a defendant's punishment will be commensurate with his culpability. . . . [¶] A defendant who attempts to achieve sexual gratification by committing a number of base criminal acts on his victim is substantially more culpable than a defendant who commits only one such act. We therefore decline to extend the single intent and objective test of section 654 beyond its purpose to preclude punishment for each such act." (*Id.* at pp. 552–553.)

The same is true here. Buchanan kidnapped Doe with the intent to sexually assault her. Then, when she tried to climb out of the van window, he assaulted her, again with the intent to commit a sex offense and with a second, independent objective: to try to prevent her from escaping. Substantial evidence supports the trial court's implied conclusion that Buchanan's intent in kidnapping Doe was separate and distinct from his later intent in assaulting her. By committing the assault, Buchanan was "substantially more culpable" than a defendant who committed only a kidnapping, and as a result, section 654 did not bar imposition of sentence on count 2. (See *People v. Perez, supra,* 23 Cal.3d at p. 553; *People v. Nguyen* (1988) 204 Cal.App.3d 181, 191 [section 654 "cannot, and should not, be stretched to cover gratuitous violence or other criminal acts far beyond those reasonably necessary to accomplish the original offense"].)[4]

---

[4] Buchanan's reliance on *People v. Latimer* (1993) 5 Cal.4th 1203 is unavailing. There, the defendant kidnapped a woman, drove her to an isolated area and raped her, then drove a few more yards and raped her again. The *Latimer* court held that although the kidnapping and the rapes were separate acts, the defendant could not be punished separately because "the sole objective of the kidnapping was to facilitate the rape." (*Id.* at pp. 1205, 1217.) Here and in contrast to *Latimer*, Buchanan had two independent objectives in committing the crimes at issue.

The court, however, erred by ordering the prior serious felony conviction enhancement attached to count 2 to run consecutive to the sentence imposed on count 1. "[A] prior serious felony enhancement imposed on a determinate sentence must follow the mode of sentencing imposed on at least one of the determinate counts." (*People v. Tua* (2018) 18 Cal.App.5th 1136, 1139.) Thus, "where the trial court . . . exercises its discretion to run the determinate sentence concurrently with the indeterminate sentence, the prior serious felony enhancement that attaches to those determinate counts must also be . . . ordered to run concurrently." (*Id.* at p. 1143.)

Here, the court imposed a concurrent determinate term on count 2. As a result, the enhancement attendant to that conviction must also run concurrently. If the court does not strike or dismiss this prior serious felony conviction enhancement under Bill 1393 (see *post*, at pp. 15–16), the court must order the enhancement to run concurrently to count 2.

D.      Remand to Impose or Strike a Single Prior Prison Term Enhancement

The information alleged Buchanan suffered seven prior prison terms under section 667.5, subdivision (b), which provides a one-year sentence enhancement "for each prior separate prison term" served by the defendant. At sentencing, "the trial court was required to impose the section 667.5, subdivision (b) prior prison term enhancements or strike them in whole or in part pursuant to section 1385, subdivision (a)." (*People v. Garcia* (2008) 167 Cal.App.4th 1550, 1561.)

The parties agree the court made no explicit findings on the prior prison term enhancement allegations. The Attorney General requests remand to allow the court to impose or strike the enhancements. Buchanan acknowledges remand is appropriate, but contends he served only *one* prison term within the meaning of section 667.5, subdivision (b) because all of his "prior convictions were served in one continuous prison term."

14

Buchanan is correct.[5] "A 'prior separate prison term' is 'a continuous completed period of prison incarceration imposed for the particular offense alone or in combination with concurrent or consecutive sentences for other crimes . . . .' [Citation.] Under this provision, 'a defendant who has served concurrent or consecutive prison sentences on various commitments is deemed to have served only one prior prison term for the purpose of the enhancement provisions of . . . section 667.5.' " (*People v. Grimes* (2016) 1 Cal.5th 698, 738–739.) On remand, the court must exercise its discretion to strike or impose a single prison prior enhancement. (See *People v. Langston* (2004) 33 Cal.4th 1237, 1241; *People v. Bradley* (1998) 64 Cal.App.4th 386, 392.)

E.     Limited Remand for Bill 1393

The trial court imposed two five-year terms for Buchanan's prior serious felony convictions (§ 667, subd. (a)(1)). When Buchanan was sentenced in 2017, these enhancements were mandatory. While Buchanan's appeal was pending, Bill 1393 became effective. Bill 1393 amends sections 667, subdivision (a) and 1385 to provide the trial court with discretion to strike or dismiss enhancements for serious felony convictions. (See *People v. Garcia* (2018) 28 Cal.App.5th 961, 971–972.)

In supplemental briefing, the parties agree Bill 1393 applies to Buchanan's case, and that remand is appropriate. We remand for the trial court to exercise its discretion under Bill 1393. If the court declines to strike or dismiss the prior serious felony conviction enhancement attached to count 2, it must run that enhancement concurrently with the sentence imposed on count 2. (See *People v. Tua*, *supra,* 18 Cal.App.5th at p. 1139.)

---

[5] At sentencing, the prosecutor stated the prosecution had proven Buchanan "served *a prior prison term* for the 1996 convictions." (Italics added.) The probation department recommended Buchanan "should be additionally sentenced to 1 year, as the People have pled and proven a prior prison commitment" under section 667.5, subdivision (b).

## DISPOSITION

The judgment of conviction is affirmed.  The matter is remanded for resentencing. At resentencing, the court shall:  (1) determine the duration of the no-contact order and explain the reasons for that duration in accordance with the factors listed in section 136.2, subdivision (i)(1); (2) impose a consecutive sentence for count 3; (3) order the prior serious felony enhancement (§ 667, subd. (a)(1)) attendant to count 2 to run concurrently to count 2, unless the court exercises its discretion to strike or dismiss that enhancement pursuant to Bill 1393; and (4) exercise its discretion to impose or strike a single prison prior enhancement (§ 667.5, subd. (b)); and (5) exercise its discretion pursuant to Bill 1393.

Upon resentencing, the court is directed to issue a new abstract of judgment and to forward a certified copy to the Department of Corrections and Rehabilitation.

16

_____
Jones, P. J.

I CONCUR:


_____
Burns, J.

A153155

NEEDHAM, J., Concurring in part and Dissenting in part:

I concur in part and dissent in part.

Although I fully agree with most of the majority opinion and its conclusion that the case must be remanded for resentencing, I disagree that a concurrent sentence may be imposed for the assault with intent to commit a sexual offense in count 2 (Pen. Code, § 220),[1] a serious and violent felony. (§§ 667.5, subd. (c)(15), 1192.7, subd. (c)(29).) In 2012, the "Three Strikes" law was amended by the Three Strikes Reform Act of 2012 (Proposition 36). I believe that amendment made consecutive sentencing mandatory when a defendant subject to sentencing under the Three Strikes law is, as here, currently convicted of more than one serious or violent felonies.

The Three Strikes law is contained in two parallel statutes. The legislative version, now set forth in section 667, subdivisions (b) through (j), became operative in March 1994. The initiative version of the law, section 1170.12, was enacted by the voters and became operative in November 1994. The two statues are "nearly identical" in many respects. (*People v. Estrada* (2017) 3 Cal.5th 661, 666, fn. 2.) Both versions of the statute were amended by Proposition 36, enacted by the voters in November 2012. The amendments included changes that were made to section 1170.12, subdivision (a)(7), but not to identical language in section 667, subdivision (c)(7).

Prior to the enactment of Proposition 36, section 1170.12, subdivision (a) provided in relevant part: "(a) Notwithstanding any other provision of law, if a defendant has been convicted of a felony and it has been pled and proved that the defendant has one or more prior serious and/or violent felony convictions, as defined in subdivision (b), the court shall adhere to each of the following: [¶] . . . [¶] (6) If there is a current conviction for more than one felony count not committed on the same occasion, and not arising from the same set of operative facts, the court shall sentence the defendant consecutively on each count pursuant to this section. [¶] (7) If there is a current conviction for more than one

---

[1] Further statutory references are to the Penal Code.

1

serious or violent felony *as described in paragraph (6) of this subdivision*, the court shall impose the sentence for each conviction consecutive to the sentence for any other conviction for which the defendant may be consecutively sentenced in the manner prescribed by law." (Italics added.) Substantially identical language was contained in section 667, subdivision (c)(6) and (c)(7).

In *People v. Hendrix* (1997) 16 Cal.4th 508 (*Hendrix*), the state Supreme Court was called on to construe section 667, subdivisions (c)(6) and (c)(7). It concluded (1) subdivision (c)(6) provided that consecutive sentencing was mandatory for any felony not committed on the same occasion and not arising from the same set of operative facts; (2) by implication, the court retained the discretion under subdivision (c)(6) to impose concurrent terms for any felonies committed on the same occasion or arising from the same set of operative facts; (3) by referring to "a current conviction for more than one serious or violent felony as described in paragraph (6)," subdivision (c)(7) incorporated subdivision (c)(6)'s rule regarding consecutive sentencing with respect to more than one serious or violent felonies, so that consecutive sentencing for such crimes was mandatory when they were not committed on the same occasion and did not involve the same set of operative facts, but concurrent terms were permissible when they were committed on the same occasion or involved the same set of operative facts; and (4) section 667, subdivisions (a)(6) and (a)(7) were not redundant because subdivision (c)(7)'s requirement that a crime not committed on the same occasion and not arising from the same set of operative facts be imposed "consecutive to the sentence for any other conviction for which the defendant may be consecutively sentenced in the manner prescribed by law" meant that not only must sentences for such crimes be consecutive to each other, they must also be consecutive to sentences imposed for any (nonserious/nonviolent) crimes, whether felonies or misdemeanors. (*Hendrix*, at pp. 512–514; see also 518–519 (conc. opn. of Mosk, J.); *People v. Lawrence* (2000) 24 Cal.4th 219, 226–234.) The same reasoning applied to section 1170.12, subdivisions (a)(6) and former (a)(7). (*People v. Deloza* (1998) 18 Cal.4th 585, 590–591.)

2

Proposition 36 amended section 1170.12, subdivision (a)(7) to delete the reference to "paragraph 6" and replace it with a reference to subdivision (b) [defining serious and violent felonies] so that it now provides, "If there is a current conviction for more than one serious or violent felony as described in subdivision (b), the court shall impose the sentence for each conviction consecutive to the sentence for any other conviction for which the defendant may be consecutively sentenced in the manner prescribed by law." The plain meaning of section 1170.12, subdivision (a)(7), as amended, is that when a defendant stands currently convicted of more than one serious or violent felonies, the sentences for those felonies must be imposed consecutive to any term for which consecutive sentences are lawful, whether or not they were committed on the same occasion or involved the same set of operative facts. This includes the sentences on the current serious or violent felonies themselves. The amendment effectively abrogates the holding of *Hendrix*, *supra*, 16 Cal.4th 508 to the extent that decision recognized that the former version of the statue (in which paragraph (7) referred to paragraph (6)) allowed the court to impose concurrent sentences for current serious or violent felonies committed on the same occasion or arising out of the same set of operative facts. (Couzens & Bigelow, Cal. Practice Guide:  California Three Strikes Sentencing (The Rutter Group 2018) § 8:1, pp. 8-2 to 8-13.)

Proposition 36 did not similarly amend the parallel provision in section 667, subdivision (c)(7).  There is no plausible reason the voters might have had for amending section 1170.12, subdivision (a)(7), but not section 667, subdivision (c)(7).  The ballot materials do not differentiate between the two statutes.  (Official Voter Information Guide, Gen. Elec., (Nov. 6, 2012) summary of Prop. 36, pp. 48–53.)  In other material respects save one, Proposition 36 amended the comparable substantive provisions of both sections 667 and 1170.12.[2]  (Official Voter Information Guide, Gen. Elec., (Nov. 6,

---

[2] Proposition 36 also deleted section 1170.12, subdivision (a)(8), but not the nearly identical provision in section 667, subdivision (c)(8).  Both paragraphs provid(ed) that a sentence under the strikes law must be imposed consecutive to any prison term the defendant was currently serving.  As appellant was not serving another prison term when

3

2012) summary of Prop. 36, pp.105–109; compare proposed amendments to § 667, subds. (c), (c)(3), (d), (d)(2), (d)(3), (e), (e)(1), (e)(2), (e)(2)(A)(i), (e)(2)(C), (f)(1) & (f)(2), with § 1170.12, subds. (a), (a)(3), (b), (b)(2), (b)(3), (c), (c)(1), (c)(2)(A)(i), (c)(2)(C), (d)(1) & (d)(2).)  The amendment to section 1170.12, subdivision (a)(7) changed the rule of consecutive sentencing for current serious and violent felonies, making such sentences mandatory in all cases, and it would be nonsensical to have two statutes that deal with the same subject matter create different and conflicting rules, one allowing concurrent sentences in three strikes cases, while one does not.  It is not reasonably possible to harmonize the two statutes, and the later-enacted initiative version—section 1170.12, subdivision (a)(7)—controls.  (*People v. Torres* (2018) 23 Cal.App.5th 185, 202 (*Torres*); Couzens & Bigelow, *supra*, § 8:1, pp. 8-1 to 8-6.)  The failure to amend section 667, subdivision (c)(7) must be deemed an oversight or drafting error.  (*Ibid*.; see also *People v. Garcia* (1999) 21 Cal.4th 1, 5–6 [court may reform a statute when "compelled by necessity and supported by firm evidence of the drafters' true intent"].)

This interpretation is consistent with the purpose of Proposition 36, which reduces the penalty for certain nonserious, nonviolent offenses and maintains "a system of lengthy prison terms for the truly dangerous and violent offenders."  (Couzens & Bigelow, *supra*, 8:1, p. 8-5.)  "Prop. 36 will help stop clogging overcrowded prisons with non-violent offenders, so we have room to keep violent felons off the streets."  (Official Voter Information Guide, Gen. Elec., (Nov. 6, 2012) argument in favor of Prop. 36, p. 52.)  Giving courts the discretion to make sentences concurrent when they are for nonserious or nonviolent felonies while making consecutive sentences mandatory when defendants are currently convicted of serious or violent crimes is consistent with this purpose.  Although the trend in recent years has been to expand rather than limit trial court discretion (e.g., Senate Bills No. 620 and 1393, §§ 12022.5, subd. (c), 12022.53,

---

he was sentenced, this provision has no potential application to him, but we note that the failure to delete section 667, subdivision (c)(8) in addition to section 1170.12, subdivision (a)(8), appears to be an oversight.

subd. (h), 667, subd. (a)), such a result is not warranted when it contradicts the plain language of a statute and when the purpose of restricting discretion—here, having truly dangerous felons serve lengthy prison terms—is apparent.

Notwithstanding the plain meaning of current section 1170.12, subdivision (a)(7), Division One of this Court recently held that the changes wrought to this subdivision by Proposition 36 did not abrogate *Hendrix*, *supra* 16 Cal.4th 508, and that trial courts still have discretion to impose concurrent terms for more than one serious or violent felonies committed on the same occasion or arising out of the same set of operative facts. (*Torres*, *supra*, 23 Cal.App.5th at pp. 197–202.)  I respectfully disagree with this conclusion.

The *Torres* court noted that Proposition 36 made no changes to section 1170.12, subdivision (a)(6), and that consequently, the *Hendrix* rule continues to apply.  (*Torres*, *supra*, 23 Cal.App.5th at pp. 200–201.)  *Torres* noted that section 1170.12, subdivision (a)(6) applied to all current felonies, including serious and violent felonies.  (*Torres*, *supra,* at pp. 200–201.)  It acknowledged that section 1170.12, subdivision (a)(7), which referred only to current convictions for one or more serious and violent felonies, replaced the reference to "paragraph 6" with a reference to "subdivision (b)" [defining serious and violent felonies]; thus, "Proposition 36 changed the *triggering* language of the subdivision, and subdivision (a)(7) now applies not only when serious or violent felonies were not committed on the same occasion or did not arise from the same set of operative facts, but whenever a defendant is convicted of multiple serious or violent felonies." (*Torres, supra,* at p. 201.)  However, the *Torres* court concluded that "Proposition 36 made no change, however, to the *directive* portion of section 1170.12, subdivision (a)(7), which as the Supreme Court explained in *Hendrix*, is what makes subdivision (a)(7) not duplicative of subdivision (a)(6). [Citation.]  This portion of subdivision (a)(7), *additionally* requires a court to impose the sentences for serious and violent felonies 'consecutive to the sentence for *any other conviction* for which the defendant may be consecutively sentenced in the manner prescribed by law.' "  (*Ibid*.)  The *Torres* court found the change to section 1170.12, subdivision (a)(7) "impacts only the additional

5

requirement for consecutive sentencing of 'other' current offenses (namely, *non*serious and/or violent felonies and misdemeanor offenses). . . . where there are multiple serious and/or violent felony convictions, the sentences for those crimes 'must run consecutive *to the sentence for <u>any other</u> offense, whether felony or misdemeanor, for which a consecutive sentence may be imposed*.' "  (*Torres, supra,* at pp. 201–202.)

I interpret the amended version of section 1170.12, subdivision (a)(7) differently. Section 1170.12, subdivision (a)(6) requires consecutive sentences for any felony that was not committed on the same occasion and which did not arise from the same set of operative facts; the converse of that principle is that concurrent sentences *are* allowed for any crime that was committed on the same occasion or arose from the same set of operative facts.  By referring to "a current conviction for more than one serious or violent felony as described in paragraph (6)," the former version of section 1170.12 incorporated the same principle in cases where the defendant was currently convicted of more than one serious or violent felonies.  *Hendrix* quite reasonably interpreted this language to mean what it said, and extended the same rule regarding concurrent sentencing to both nonserious/nonviolent current felonies and more than one serious/violent current felonies, with the additional requirement that sentences for more than one serious or violent felonies must be consecutive to other crimes for which the defendant may be consecutively sentenced when those crimes did not occur on the same occasion and did not involve the same set of operative facts.  (*Hendrix*, *supra*, 16 Cal.4th at pp. 512–514.)

When the electorate passed Proposition 36, which deleted the reference to "paragraph 6" in section 1170.12, subdivision (a)(7), it signaled its intention that defendants convicted of more than one serious or violent felonies would no longer be subject to the rule of subdivision (a)(6).  "An intention to change the law or the meaning of a statute will generally be inferred or presumed from a material change in the statutory language.  Such an intent is inferred when the existing law is amended by deletion of an express provision of the previous statute and the substitution of an alternative provision." (*People v. Salazar* (1983) 144 Cal.App.3d 799, 806–807.)  Subdivision (a)(7) no longer incorporates the language of "paragraph (6);" it is not potentially duplicative of that

subdivision; and it should be interpreted by reference to its language standing alone rather than to subdivision (a)(6).

The amended version of section 1170.12, subdivision (a)(7) eliminates any distinction between more than one serious or violent felonies that were committed on the same occasion or which arose from the same set of operative facts and those which did not fall into those categories. It provides that in any case where the defendant stands convicted of "more than one serious or violent felony" "the court shall impose the sentence for each conviction consecutive to the sentence for any other conviction . . . ." Now, under the plain language of section 1170.12, subdivision (a)(7), consecutive sentences—including sentences consecutive to each other—must be imposed on more than one serious or violent felonies whenever consecutive sentences would be authorized, not merely on those "not committed on the same occasion, and not arising from the same set of operative facts." (§ 1170.12, subd. (a)(6).)

When interpreting an initiative, our primary purpose is to ascertain and effectuate the voters' intent. (*People v. Garner* (2016) 2 Cal.App.5th 768, 771.) We look first to the language of the statute itself, and if there is no ambiguity, then the plain meaning of the language governs. (*Id.* at p. 772.) Here, the amended version of section 1170.12, subdivision (a)(7) is not ambiguous: when a defendant is currently convicted of more than one serious or violent felonies, consecutive sentences must be imposed for those crimes. To construe section 1170.12, subdivision (a)(7) as allowing concurrent terms for more than one serious or violent felonies when they meet the criteria of subdivision (a)(6) is no longer justified by the plain language of the statute.

The effect of construing section 1170.12, subdivision (a)(7) to still permit concurrent terms where it applies would be that nonserious, nonviolent felonies are treated more harshly than serious or violent felonies for purposes of imposing consecutive sentences. As *Torres* recognizes, under section 1170.12, subdivision (a)(7), the court must impose consecutive sentences for nonserious, nonviolent felonies whenever a defendant has been convicted of more than one serious or violent felonies, and must do so regardless of whether they were committed on the same occasion or

7

involved the same set of operative facts. (*Torres*, *supra*, 23 Cal.App.5th at p. 203, fn. 10.) Yet it need not make the sentences for serious or violent felonies consecutive with each other, at least if they were committed on the same occasion or involved the same set of operative facts. (*Ibid*.) "We must also avoid a construction that would produce absurd consequences, which we presume [the electorate] did not intend." (*People v. Mendoza* (2000) 23 Cal.4th 896, 908.)

Appellant's current convictions for kidnapping with intent to commit a sexual offense and assault with intent to commit a sexual offense in counts 1 and 2 were serious and/or violent felonies. (§ 667.5, subd. (c)(14) & (15); § 1192.7, subd. (c)(10), (20) & (29).) Consecutive sentences are required on those counts pursuant to section 1170.12, subdivision (a)(7). Appellant's conviction for failing to register as a sex offender was not a serious or violent felony, but because the serious/violent felonies had to be consecutive "to the sentence for any other conviction for which the defendant may be consecutively sentenced," sentence on that count must also be consecutive. (§ 1170.12, subd. (a)(7).) On remand the court should impose sentence accordingly.

_____
NEEDHAM, J.

A153155

8

Trial Court:  Alameda County Superior Court

Trial Judge:  Hon. Trina L. Thompson-Stanley

Counsel:

William J. Capriola, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler and Jeffrey M. Laurence, Assistant Attorneys General, Donna M. Provenzano and Victoria Ratnikova, Deputy Attorneys General for Plaintiff and Respondent.